### MEDLIN & ANDERSON vs BROOKS & KAVANAUGH.

1. Instructions should not be so given as to leave a jury to conjecture their meaning, when that meaning is contrary to their obvious import.

2. The law will not imply a promise to pay for an act which is of no benefit to a party.

### APPEAL from Platte Circuit Court.

HICKMAN AND JONES, for Appellants.

The following are the points relied on by the appellants to reverse the judgment in this case:

1st. The damages are excessive, the verdict is against the weight of evidence, and the circuit court ought to have granted a new trial. See 4 vol. Mo. Reports 80.

2d. This suit is brought by Brooks & Kavanaugh, against Medlin & Anderson, and the testimony, (if it proves any thing,) proves a contract between Brooks on the one part, and Medlin on the other, without any partnership being shown, and therefore the judgment ought to be reversed. See 1 Chitty 31, 34; 2d vol. Mo. Rep. 54; 1st J. J. Mar-205, 2d J. J. Mar. 38.

3d. The circuit court erred in giving the instructions asked by the

Medlin and Anderson vs. Brooks and Kavanaugh.

plaintiffs, and in refusing to give the 3d instruction asked by the defendants, 4 vol. Mo. Rep. 44: C. Mon. 612.

4th. That the work was not performed by the plaintiffs according to contract, and therefore they were not entitled to recover.   4 Mo. Rep. 44, 46, 483; 3 vol. Mo. Rep. 166, 168.

5th. That the plaintiffs could only recover on a special count, and as the evidence varied from all the special counts, they were not entitled to recover on their declaration.   See 6 vol. Mo. Rep. 30, and authorities cited.

6th. That an agreement to pay an additional price for the same work mentioned in the contract, is *nudum pactum.*   2. Saund. Pl. Ev. p. 502; Chitty on Contracts, 161.

7th. That the plaintiffs could not recover on an implied contract, when there was an express contract in force.   3 vol. Mo. Rep. 254, 7 vol. Mo. Rep. 433.

8th. That the contract could only be discharged by performance or discharge under seal.   6th vol. Mo. Rep. 510.


THOMAS AND BALDWIN, for Appellees.

POINTS AND AUTHORITIES.

1st. The court did not err in striking out the 3rd plea of defendants. If it be considered an answer to the action at all, it amounts to the general issue; gives no color; is argumentative; and it was in the discretion of the court to set aside or strike it out.   Vide Step. plea. side page 420–'21, Com. Dig. 6 vol. 119, *et passim.*   It is obviously no answer to the action, and any issue joined thereon would have been altogether indecisive of the matter in controversy.   Kyle vs. Hoyl, 6 Mo. Rep. 545.

2d. The court did not err in overruling defendants motion to strike out the 1st, 2d, 3d and 4th counts in plaintiffs declaration.   In this particular instance, defendants had no right to such a motion.   They had filed their general demurrer to the declaration, which was overruled by the court and virtually withdrawn, by pleading to the action; vide 6 Mo. Rep. 174, Sweney vs. Welling, same Dickens *et al.* vs. Mullikin, 177.   The same matters which are alledged, and many matters which could probably be alledged in such motion as grounds, were, as they are all, substantial defects, decided, or will be presumed to have been decided by the court under the general demurrer.   Must the court suffer itself to be harrassed and insulted by repeatedly raising the same

questions in the face of its solemn decision? Defendants should have excepted to overruling the demurrer. The objections made against the declaration in defendant's motion, are entirely without foundation. The 3d and 4th counts contain a statement of the contract and consideration according to its legal effect, without any notice of the variations, and aver performance specifically and entirely. The time for the completion, it is true, is stated to be in the spring of 1841, but that is the contract, and the evidence supports it. The first count states that as cut stone was demanded by the commissioner instead of neatly hammered stone, plaintiffs stopped the work; and defendants promised if they would go on and complete the work of cut stone, they should be paid therefor what it was reasonably worth. Here is obviously a consideration. Different and better work is to be done than the contract called for. The time for the completion was fixed, and the substitution of piers for walls made by the agreement of the parties. In the second count, it is stated that the plaintiffs threw up and stopped the work, and afterwards went on and completed it under an agreement that they should be paid for the best side hammered work what it was reasonably worth. The plaintiffs had a right to stop the work, subjecting themselves to such damages as defendants should show themselves entitled to; and then going on afterwards to do the work upon the faith of the new promise, is unquestionably a sufficient consideration at this day. Vide 2 Lett. Rep. 170, Wilkins vs. Duncan; Sugd. on Vend. 158–'9, note 81, and cases there cited; Lattimore *et al.* vs. Haisen, 14 John. R. 330; Dearborn vs Cross, 7 Cow. 48; Fleming vs. Gilbert, 3 John. R. 358; Keating vs. Price, 1 J. Cas. 22; Edwin vs. Saunders, 1 Cow. 250; 3d Am. Ed. Chitt. on Contracts, 27–'8, note ‡, and Monroe vs. Perkins, there cited; 9 Pickering, 298.

3. There was no demurrer to 3d plea of defendants, and there are no traces of any upon the record.

4. The court did not err in giving the instruction asked for by the plaintiffs.

5. The court did not err in giving the 2d instruction asked for by the plaintiffs. Vide 2 Star. Ev. side page 55–'6; 3 Monroe 404, Cochran vs. Tatum; 1 Chitt. Plea. 382–'3 and notes, and cases there cited.

6. The court did not err in giving the 3d instruction asked for by plaintiffs. The language of this instruction may appear on first glance liable to criticism. Probably it would have been more strictly accurate in relation to work of this kind, and in this particular instance to have been, if the jury believe from the testimony, that the work was completed by plaintiffs, with the exception of the two piers, and defendants

consented to, or acquiesced in their not being put up, then, &c. But the former mode of expression is substantially the same; would convey the same idea to the jury, and be more readily understood by them. It is the custom in common parlance, to speak of the acceptance of buildings, curing defects in their execution, when nothing more or less is meant than a consent thereto, or an acquiescence therein by the employer. This instruction is substantially correct, and in connection with the others given to the jury, sufficiently explicit. Vide cases before cited, 2d ed. Stor. on Bail, 287–'8; 4 Mo. R. Fageur vs. Meredith, 538.

7. The court did not err in giving the 4th instruction asked for by plaintiffs.

8. The court did not err in giving the 5th instruction asked for by plaintiffs. Vide 2 Am. Ed. Chitt. Cont. side page 169 † note; 2 Star. Ev. p. 57; Story Bail 288; 3 Harrison Ind. 2273 and cases there cited; 2 Ed. Story Bail 287, note 4 and cases there cited.

9. The court did not err in giving the 6th instruction asked for by the plaintiffs. Vide 2 Litt. R. 170, and cases in connection cited above.

10. The court did not err in giving the 7th instruction asked for by the plaintiffs.

11. That the court did not err in refusing the 3d instruction asked for by the defendants, is obvious, inasmuch as it requires an express agreement to vary the original contract. Vide cases before cited.

12. The court properly overruled the defendants' motions in arrest, and for a new trial. The only question worthy of notice at all, arising upon this record, is whether the verdict is not against the evidence; whether there is any evidence conducing to show that plaintiffs erected the two small piers,—or to show an excuse for not erecting them. The erection of the piers by Medlin, was in reality an erection of them by plaintiffs. He hired a hand for that purpose that had been in plaintiffs employ. Defendants settled with plaintiffs, and paid them what the original contract called for. No objection is made about the piers. The extra face work was the only matter of controversy. It is but a rational conclusion that the expense of putting up the piers was charged to plaintiff's account, and deducted from their pay. The evidence shows an acceptance of, in other words an acquiescence in, plaintiffs default in putting up the piers. The money is paid for all but the extra face work, which constituted the matter of difference between them. But again, defendants prevented plaintiffs from putting up their piers and completing the work, by hiring others to put them up, when plaintiffs had ample time for that purpose. When the law has been fairly

before the jury—the defendants instruction given—some of them in the teeth of the law, and when it appears that justice has been done between the parties, it must be a flagrant case that would justify the supreme court in setting aside the verdict of a jury affirmed by the court below.

SCOTT, J., delivered the opinion of the court.

This was an action of assumpsit, brought by Brooks and Kavanaugh, against Medlin and Anderson, in which the plaintiffs recovered $212, 12 1-2 damages. After an unsuccessful application for a new trial, the defendants brought the cause here by appeal.

Medlin and Anderson, the defendants below, contracted with the county of Platte to build the foundation of a court house for said county : it was agreed that the work should be done with stone ; and the face of the wall entirely around the house neatly hammered, and placed in the alternate ranges, of one thickness, as near as the quality of the stone would permit. Medlin & Anderson underlet the contract to Brooks & Kavanaugh, they stipulating to perform the work with the exception of the steps and door-sills, in conformity to the conditions of a bond executed by Medlin & Anderson to the county of Platte, for the performance of the same. It does not appear expressly although it may be inferred, that Brooks & Kavanaugh undertook the work at the same price that Medlin & Anderson were entitled to receive for the same from the county of Platte. After the work had progressed apace, the superintendent of the county interfered, and told the undertakers that the stone they had dressed for corners would hardly do for ashlers, and those they had dressed for ashlers would not do at all. Brooks & Kavanaugh complained to the superintendent that he exacted better work than they had undertaken to do. The superintendent advised them to abandon the work, as it could not be done for the price at which it was undertaken. Kavanaugh, when he informed the superintendent that the county court had intimated that he should have additional compensation, was advised by that officer not to look to that source for relief. A witness testified that he assisted in the performance of the work : while so employed the superintendent informed one of the plaintiffs (Brooks) that he would not receive the work unless it should be better done than even the corners had been. The corners were built of cut stone ; some of the stone was hammered and shown to the superintendent, and he declared he would not receive it if it were put up; the stone shown to the superintendent was

neatly hammered. Brooks then directed the witness to quit work, that his contract did not require him to do the work in the manner required by the superintendent, and that it could not be done as required, for the price at which it was undertaken. The witness ceased work accordingly, and informed Medlin, one of the defendants, that he had done so in consequence of the command of Brooks, who communicated to Medlin the cause of his abandoning the undertaking. Medlin requested the witness to hold on, that he would go and see Kavanaugh, another of the plaintiffs; he returned in a short time, and directed the witness and another workman to go on and do the work, as it had been done before they were interrupted by Brooks. Witness heard Medlin say to Brooks, at the time he was directed to go on with the work, that he would recover pay for the extra work, or he would spend the last ox he had. Kavanaugh circulated for the purpose of obtaining signatures, a petition to the county court, for additional compensation. Some evidence was introduced conducing to show that there was a difference between hammered and cut stone, the latter being more costly than the former, requiring more time and labor. Others denied that there was any difference, and were of opinion that the work performed by the plaintiffs would not be considered as neatly hammered work.

The controversy seems to have arisen from a difference in opinion among mechanics, as to what constituted hammered and cut stone work. The plaintiffs paid to defendants the contract price for the work.

The court, on motion, struck out the third plea of the defendants, which in substance, set up for the defence, that the several causes of action in the declaration mentioned, accrued to the plaintiffs for the work and labor, care and diligence of the said plaintiffs, in and about the building of a certain court house for the county of Platte.

Amongst other instructions given at the instance of the plaintiffs, were the following:

If the jury find from the testimony that the work was received by the defendants in execution and discharge of the agreement, they must find for the plaintiffs.

If they find there was additional, and better work than the contract called for, with the knowledge and consent of the defendants, and with the knowledge that the same would cost more than the contract price, and without any special agreement what should be paid therefor, plaintiffs are entitled for such work what it is reasonably worth.

As to the propriety of the action of the court in striking out the

third plea of the defendants, it cannot be maintained that the plea was a sufficient bar to the action. The plea would clearly have been bad on demurrer. It is only to be regretted that the court permitted so anomalous a mode to be employed, in order to get rid of it. When the defect in the plea is such, that it cannot be reached by a demurrer, the court should not suffer a party to avail himself of it, by a motion to strike out. Such a practice was pointedly condemned by this court in the case of Snowden vs. McDaniel, 7 Mo. Rep. 313; its inconvenience and departure from principle were then exposed, and it is to be hoped that such a practice will not longer be tolerated. We cannot but admire the patience of that court, that would permit counsel a second time to raise objections to a plea, by a motion to strike out, after the same objections had been disposed of on a demurrer. This court has held, that after a demurrer to a declaration has been overruled, a motion in arrest of judgment for a defect in the declaration would not lie. So we suppose that after a demurrer to a plea is overruled, the court will not suffer its sufficiency to be again questioned, by a motion to strike out. That a court permitted this to be done, would not be error; but we remark upon it, because it is a departure from all correct practice, encumbers the record with useless matter, and causes unnecessary delay in the administration of justice.

As the evidence was not very clear, and the jurors were the proper judges of its weight, the court would have been loth to interfere with the verdict rendered in this cause, could it be satisfied that it was not induced by the erroneous instructions of the circuit court. The propriety of some of the instructions cannot be maintained. The jury was instructed that if they believe from the testimony in the cause that the work was received by the defendants in execution and discharge of the agreement, they must find for the plaintiffs. It is only necessary to state the proposition in connexion with the facts preserved in the record, in order to its refutation. The defendants paid the plaintiffs the agreed price for the work. The controversy was respecting additional compensation; and because the work was received by those for whom it was intended, the instruction assumes as a consequence, that the plaintiffs promised to give additional compensation, although they had given all that they had received themselves, and had no other interest in the matter, than that their liability to the county should be discharged. Surely if the instruction contained the law, the defendants may have an action against the county, and recover the amount, to the payment of which, they have been subjected by this action.

There is nothing in the record to qualify this instruction. The other

instructions do not remove the objection arising from the generality of its terms. If it be said that it was given to meet the objection, that the work was not done in time, this does not appear from any thing contained in the other instructions. Instructions should not be so given, as to leave the jury to conjecture their meaning, when that meaning is contrary to their obvious import.

The second instruction above set forth, is not freed from objections. If it is considered in connection with the fact that the plaintiffs undertook to perform the work, in the same manner that the defendants had stipulated to do it, where is the equity or justice in subjecting them to the charge for additional compensation, without a promise, express or implied. The law, under the circumstances, will not imply a promise by them. It was no benefit to them. They were under no obligation to do it. The condition of their bond would not have been violated by an omission to do the work, for the instruction assumes that it was additional or extra work. If it was such, Medlin & Anderson were under no obligation to perform it. A promise to pay for the work might have, with greater propriety, been implied against the superintendent. It was done with his consent, and with a knowledge that it would cost more than the contract price. Why not as well raise a promise against him, for it was through him, that the injustice, if any, was done. Implied promises are such as reason and justice dictate, and which, therefore, the law presumes that every man undertakes to perform. Is it a dictate of reason or justice, that the plaintiffs should pay for the additional work, when it was in no manner of benefit to them, and when they were under no obligation to do it?

Judgment reversed.